OPINION OF THE COURT
Sidney H. Asch, J.
Various parties have moved to dismiss the cross complaints of Brause and/or Authenticolor. Those made by Federal Pump Repair, Rheem, Sta-Rite and Federal Pump Corp. are denied. The motion made by Consolidated Edison is granted. Inasmuch as the legal problem presented with respect to the responsibility of Consolidated Edison has not been decided before, an explanation is in order.
Just to briefly recapitulate the facts, the explosion occurred on April 22, 1974, in a building located at 306 East 45th Street, in the City of New York.
A water tank, part of a system designed to supply water to a sixth floor tenant, exploded and struck a gas service line running overhead in the basement of the building with the result that the gas line was separated at a coupling on impact.
The gas which escaped filled the building, was ignited and the explosion resulted. The portion of the gas line which was separated was installed at the time the building was constructed in the late twenties. It is irrelevant for the purpose of deciding this motion to dismiss the actions against Consolidated Edison to determine who installed that gas line.
The actions against Consolidated Edison are brought essentially under two basic theories. The first is that if Consolidated Edison had inspected the cellar area where the water tanks were located, it would have been on notice that the close proximity of these tanks to the overhead gas service line constituted a dangerous condition regarding which the utility had an obligation to take some action. Undoubtedly, Consolidated Edison had some responsibility with respect to the portion of the gas line involved in this case. Its obligation goes *126 all the way under the building up until the first meter. This is not inconsistent with the Federal law and regulations.
The definition of "service line” incorporated into section 192.3 of title 49 of the Code of Federal Regulations which was in effect on April 22, 1974, is as follows: " 'Service line’ means a distribution line that transports gas from a common source of supply to (a) a customer meter or the connection to a customer’s piping, whichever is further downstream, or (b) the connection to a customer’s piping if there is no customer meter. A customer meter is the meter that measures the transfer of gas from an operator to a consumer.”
When Part 192 of title 49 of the Code of Federal Regulations was amended to broaden the definition of the term "service line” ¿as set forth above in section 192.3, the Office of Pipeline Safety stated, "That the department has jurisdiction under the Natural Gas Pipeline Safety Act to regulate the transportation of gas to the point where it is used by the consumer.”
This jurisdiction has not heretofore been fully implemented in the distribution area, and it is the purpose of this rule making action to extend the limits of the definition of "service line” to insure that all such lines included in the department’s jurisdiction are adequately covered by safety regulations. "Invariably, the meter itself is owned by the distribution company and, as a practical matter, the safe condition of the line to that meter is made the responsibility of the company. Therefore, whether the line upstream of the meter is owned by the distribution company or the customer, that line is involved in the transportation of gas and brought within the regulations by its classification as a service line.”
While it is clear that Consolidated Edison had some duty to inspect, the scope of that responsibility is not as broad as the plaintiff asserts.
It is contended that defendant Consolidated Edison had the duty to inspect the cutoff valve within the building on an annual basis and that the last inspection took place February 6, 1973, and, further, that if the defendant Consolidated Edison had complied with the requirement of section 192.747 of title 49 of the Code of Federal Regulations to annually inspect such valves, it would have discovered the tanks under the subject gas pipe. This contention is, however, without merit. The valves encompassed by section 192.747 are only those which would significantly reduce the time it takes an operator to safely stop the flow of gas in an emergency. *127 Intended by this section are only curb valves or distribution system sectionalizing valves which enable the operator to shut down a section or grid the distribution system in an emergency. Unquestionably, in an emergency, accessibility by the operator (i.e., defendant Consolidated Edison) to a service head valve inside a basement is almost nil. The time requirements for the defendant Consolidated Edison to inspect the gas line herein are set forth by the State in 16 NYCRR 255.18 as buildings of public assembly which must be inspected annually; that is, at intervals of not less than 6 months or more than 15 months.
At the time that defendant Consolidated Edison inspected the cutoff valve, all that was present under the gas line were two tanks. It is noted that even if defendant Consolidated Edison had seen these two tanks, through one of its employees, they were not the cause of the explosion.
As pointed out before, since Consolidated Edison had no duty to inspect on an annual basis, it is not chargeable with knowledge of the new system using five tanks which were installed under the gas line.
The second theory of these actions is that the gas line which separated on impact was improperly joined at the coupling, and that Con Ed should have recognized the allegedly defective pipe thread, if it had adequately fulfilled its obligation to inspect this line in the basement. This assertion is not persuasive. The testimony is clear that there have been no complaints of a gas leak for the 40-some-odd years that the line was in operation. There is no convincing evidence to suggest that a visual inspection of the joint coupling would have revealed the allegedly defective condition. Defendant, if it had no duty, was simply obligated to inspect for patent defects and take some action with respect to dangerous conditions with respect to which it had notice. There was no patent defect.
It would impose an intolerable burden on a public utility to require it to physically test every pipe junction in the absence of some indication of a leak or other dangerous condition. (See Stephany v Equitable Gas Co., 347 Pa 110, 112; Cooke v Bernstein, 45 AD2d 497.)
Accordingly, Consolidated Edison’s motion to dismiss is granted.