*506 OPINION OF THE COURT
Gerard E. Delaney, J.
This is an application by Consolidated Edison Company of New York (Con Ed) for summary judgment upon that part of its underlying action for declaratory judgment which seeks to declare defendant City of New Rochelle’s Plumbing and Drainage Code Ordinance No. 197 invalid as applied to Con Edison; for declaratory judgment permanently enjoining New Rochelle from enforcing sections 17.3.1 and 17.4.1 of such code (as amended by Ordinance No. 197) against Con Edison and for a preliminary injunction enjoining New Rochelle from enforcing such code provisions during the pendency of this action.
Upon consent of Con Edison and upon oral application before this court, permission was granted to the City of White Plains and the Town of Greenburgh to intervene as defendants-intervenors inasmuch as such cities also have plumbing ordinances similar to New Rochelle’s (CPLR 1012 [a] [2]). The court further granted the application of The Plumbing and Mechanical Contractors Association of Westchester and Putnam Counties, Inc. (PMCA) a right to intervene as defendantintervenor. PMCA is an association whose membership consists of contractors performing plumbing and mechanical work and services in Westchester and Putnam Counties.
Con Ed is a utility corporation under the laws of New York State and, inter alia, a gas corporation engaged in distributing gas in the City of New Rochelle. The Cities of New Rochelle, White Plains and Greenburgh are municipal corporations under the laws of New York State.
The City of New Rochelle’s Ordinance No. 197 in amending its Plumbing and Drainage Code § 3, article 17, revised article 17.3 "licenses”, section 17.3.1 to read as follows: "only those persons licensed to do plumbing work under this Code may install service piping, gas piping, or gas appliances”.
Ordinance No. 197 further amended section 3, article 17 of the Plumbing and Drainage Code § 17.4, "permit”, so as to have section 17.4.1 read as follows: "it shall be unlawful for any person to install or cause to be installed any service piping, gas piping, gas water heaters or other gas appliances without first obtaining a permit from the Plumbing Inspector to do so.”
Ordinance No. 197 was authenticated and certified the 4th day of September 1980.
Both the City of White Plains and the Town of Greenburgh *507 have similar local ordinances requiring both permits to be obtained and the utilization of licensed plumbers to install such gas piping, etc.
Con Edison contends in substance: (1) that provisions of New York State law concerning gas service and particularly the field of gas safety regulations have been preempted by State law and that the City of New Rochelle cannot by local regulation supersede what Con Edison claims as its duty, obligation and responsibility acting as a public utility and gas corporation, itself being regulated by the New York State Public Service Commission (PSC); and (2) that New Rochelle Ordinance No. 197 conflicts both with the Public Service Law and with PSC orders and commission regulations and further that such ordinance violates both the New York State Constitution (art IX) which provides, inter alia, that local governments shall have the power to adopt and amend local laws not inconsistent with the provisions of the Constitution or any general law relating to its property, affairs or government, and violates the New York Municipal Home Rule Law article 2, § 10, which in substance sets forth the New York State constitutional provisions, vis-á-vis, the barring of local laws inconsistent with provisions of the Constitution or general law. (See, New York Municipal Home Rule Law § 10 [i], [ii].)
By way of background, only inasmuch as the court does not view such issue before it either on the underlying action or upon this motion, the City of New Rochelle has raised the issue of the propriety of Con Edison’s use of plastic piping material for installation for the individual customers from the point of service termination at the property line to the customers’ service valve or outdoor meter riser. While the City of New Rochelle prohibits the use of plastic piping under such circumstances by way of its Ordinance No. 245 dated November 16, 1982 and all parties in this action have addressed the pros and cons of the utilization of plastic piping, the court makes it clear that its use or nonuse is not the subject of the underlying action, nor this motion, but may itself be the subject of independent challenge in other proceedings.
At the session of the Public Service Commission held in the City of Albany, New York, on May 28, 1986 the PSC issued an order which interpreted section 31 (4) of the New York Public Service Law. Public Service Law § 31 (4) reads as follows: "In the case of any application for service to a building which is not supplied with electricity or gas, a utility corporation or a municipality shall be obligated to provide service to such a *508 building, provided however, that the commission may require applicants for service to buildings located in excess of 100 feet from gas or electric transmission lines to pay or agree in writing to pay material and installation costs relating to the applicant’s proportion of the pipe conduit, duct or wire, or other facilities to be installed.”
The PSC order of May 28, 1986 repealed existing part 230 of 16 NYCRR chapter III and added a new part 230, which, inter alia, stated "[e]ach gas corporation shall be solely responsible for the inspection, testing, operation, maintenance, replacement and reconstruction of all mains, service lines, service connections and appurtenant facilities which it uses to supply gas to customers.” (16 NYCRR 230.6 [a].) The PSC order further defined the term "service line” as a "piping * * * that transports gas below grade from a main to the first accessible fitting inside the wall of a customer’s building when a meter is located within the building; if a meter is located outside the building, the service line will be deemed to terminate at the outside of the building foundation wall.” (16 NYCRR 230.1 [b].) Thus, Con Edison maintains that it is by such order "solely responsible” for such piping "whether or not it was originally installed by the utility or private contractors”. The court notes initially that nowhere within such PSC order does it make Con Edison, or any utility, "solely responsible” for the "installation” of mains, service lines or service connections.
A review of the PSC proceedings of May 28, 1986 also makes it clear that in interpreting Public Service Law § 31 (4) the PSC made it clear that its resulting order was based upon the PSC’s recognition of the rights of customers to receive gas service and the "allocation” of the cost of providing mains and service lines between the utility and the applicants. In analyzing Public Service Law § 31 (4) the PSC stated that it was convinced that "the legislature did not simply codify pre-existing laws, regulations and Commission and court decisions with respect to the allocation of material and installation costs relating to facilities necessary to provide service * * * The language of PSL Section 31 (4) clearly establishes that the legislature intended to create a new right, at least for some customers.”
The PSC went on to state that "we interpret PSL Section 31 (4), (as indicating) the right to have facilities on private property provided fees charged extend to applicants for residential services whose buildings are located within 100 feet or less from distribution mains appropriate to the service re *509 quested. The extent to which facilities should be provided without charge to other applicants for residential service is a matter of public policy”.
Thus, in the PSC’s own initial interpretation of the legislative intent of Public Service Law § 31 (4), this court finds no basis initially for Con Edison’s alleged new mandate of "sole responsibility” for the installation of such piping as being the thrust of the PSC order, nor any indication that a sweeping revision was made in the obligations of the utilities, vis-a-vis such piping.
The PSC in its memorandum accompanying such order did indicate, however, that the utility "companies” are concerned about the definition because of potential responsibility for maintenance or replacement of facilities and/or a liability which may result from provisions of part 230 and other laws and regulations. The PSC, in noting the effect of new 16 NYCRR 230.6, stated that "all mains are currently installed, maintained, repaired and replaced by the utilities at their own expense. The proposed rules would not change this policy, but would also make utilities solely responsible for maintenance and replacement of all service lines. Virtually every utility objected to that requirement as it related to the provisions of service lines, either beyond the property line, beyond the meter, or installed by the customer.” (Emphasis added.)
Indeed, the PSC noted that "Con Edison similarly argues that the commission should not impose on gas utilities the same responsibilities for maintenance, repair and replacement of customers’ gas equipment, located on a customer’s private property, as for the companies own system located on its property or in the public streets * * * the company (Con Edison) states that the proposed requirements * * * would not be limited to service piping installed by the company pursuant to the new extension rules, but to all customer owned facilities previously installed * * * Con Edison strongly suggests that the maintenance of facilities on private property be limited to that portion owned and installed by the gas utility. Finally the company (Con Edison) requests the utilities not be required to enter on a customer’s private property unless the customer agrees to hold the utility harmless for claimed damage to his dwelling or grounds that may be caused by the maintenance, repair or reconstruction of gas facilities.”
In response to Con Edison’s claims, the PSC stated, inter alia, that "the reason for requiring gas corporations to oper *510 ate, maintain and replace facilities which were originally installed by customers should be obvious. The operation, maintenance and replacement of facilities must be performed safely by qualified personnel. Indeed, the same concerns with respect to public safety which prompted the utilities to argue applicants should not be permitted to install their own facilities, support the requirement here under discussion.” The PSC then stated "we deem it reasonable to require gas corporations to operate, maintain and replace facilities originally installed by customers” (emphasis added).
The court finds that there is nothing in either the PSC discussion of its explanation of the new 16 NYCRR 230, nor in the order itself which mandates that Con Edison itself has the "sole responsibility” to install such service piping. Indeed, in plaintiffs’ memorandum of law in support of its motion it is stated at page 4 that "as a result of the order, Con Edison amended its rate schedule for gas service (tariff) to require it, upon acceptance of a bona fide application for gas service, to provide services and to 'furnish, place and construct all mains, services lines, service connections and appurtanant facilities necessary to render the service requested.’ Rate schedule for gas service, PSC No. 8 general information, G.R.III-3(a), third revised leaf No. 5 (1986).” In substance it is Consolidated Edison’s own actions by filing with the PSC their tariff provisions, which were allegedly approved by the Commission, which Con Edison states have the force and effect of law and are binding upon Con Edison and its customers. It has been stated that "[o]nce accepted by the Public Service Commission, a tariff schedule * * * 'takes on the force and effect of law and governs every aspect of the utilities rates and practices’ ”. (Sisters of St. Dominic v Orange & Rockland Power Co., 79 AD2d 1021 [2d Dept 1981].) The court notes that such case was itself concerned with standards of liability limitations included in such tariffs. From the above discussion, it is clear that by submission of such tariff, Con Edison had abrogated unto itself authority well beyond the original PSC order and intent of the PSC itself in issuing such order. Public Service Law § 65 (5) and § 66 (12) in the cited case of Sisters of St. Dominic (supra) and in Lo Vico v Consolidated Edison Co. (99 Misc 2d 897) were cases both concerned with either the standard of liability or the method of compensation at issue in both cases. This court does not view Sisters of St. Dominic (supra) as authority for the proposition that the utility may, *511 by adopting a schedule, take on greater powers than granted or implied to it by the PSC itself.
On December 15, 1986, Con Edison issued a letter captioned Contractor Bulletin — 100 Foot Rule (James P. O’Toole, General Manager, Customer Services, Westchester Division), which, inter alia, stated that "while the Commission has directed the company will be responsible and will absorb the cost of the work described above, it has not directed who should perform that work.” By letter from the Plumbing Inspector of the City of New Rochelle, Henry A. Carletti, Con Edison was informed of New Rochelle Ordinance No. 197, indicating that New Rochelle requires a service pipe be installed by a licensed plumber and under a plumbing permit. By letter from Con Edison (Thomas P. Chizinski, General Manager, Westchester Gas Operations) dated January 23, 1987 to Mr. Carletti in the City of New Rochelle, Mr. Chizinski stated that "assuming that the Ordinance is applicable to outdoor buried service piping, it has been superceded as to Con Edison by State Law. We are now required by State Law both to install service piping on private property and to perform the work in accordance with detailed State regulations on such installations.” (Emphasis added.)
Finally, in another letter from Mr. Chizinski to Mr. Carletti dated February 12, 1987 it was stated that Con Edison had again reviewed the Commission order together with the Public Service Law and Public Service Commission Regulations and "we continue to maintain that the installation of service piping is our responsibility.” The instant lawsuit was commenced on March 31, 1987.
The court notes once again that under the PSC’s order 16 NYCRR 230.2 was revised to read "[w]hen an application for gas service is made to a gas corporation by the owner or occupant of the building situated on property abutting on or having access to any public right-of-way in which the governmental authority having jurisdiction will permit the corporation to install and maintain facilities, the corporation shall render the service requested in accordance with the provisions of this Part” (emphasis added). Nothing could be more clear from this statement, but that PSC revised order relating to 16 NYCRR 230 did not and does not abrogate the rights of local municipalities to themselves govern by home rule and local ordinances actual installation of the service piping.
New 16 NYCRR 230.2 (d) (2) by its language also requires *512 the utility corporation to bear amount "legally imposed by governmental authorities for obtaining required work permits”.
In determining whether or not the State law has preempted the local ordinances involved, "the intent to pre-empt may be deduced not only from express language providing for exclusivity, but also from the nature of the subject matter being regulated and ‘the purpose and scope of the State legislative scheme”. (Matter of Ames v Smoot, 98 AD2d 216, 218-219.) It has also been stated that "the mere fact that a local law touches upon the same matters as State legislation does not, in and of itself, render as invalid on preemption grounds * * * It is only where the State has evinced an intention to occupy the entire field, marked by a pervasive scheme of State legislation, or where the local enactment expressly conflicts with the State legislation, that the local legislation must yield”. (Dougal v County of Suffolk, 102 AD2d 531, 532.) This court is not persuaded in light of the PSC’s own memorandum accompanying its order of May 19, 1986 and the order itself, that the State has enacted a comprehensive and detailed regulatory scheme which would preempt and substitute Consolidated Edison as the sole installer of service piping for its gas lines from the street to the customers’ residence. (Compare, Consolidated Edison Co. v Town of Red Hook, 60 NY2d 99, 105.) In making such determination this court finds that under the provisions of the New York State Constitution and Municipal Home Rule Law cited above, that the City of New Rochelle’s Ordinance No. 197, insofar as it amended the Plumbing and Drainage Code in the sections cited above, is not "inconsistent” with State law and is not therefore preempted so as to render such ordinance invalid as applied to Consolidated Edison.
In making such determination, the court further finds that Consolidated Edison’s application for a preliminary injunction must certainly fall as the court finds that plaintiff has not shown a likelihood of success on the merits for this application, nor that the equities of the situation favor Consolidated Edison, especially inasmuch as plaintiff has not denied defendant City of New Rochelle’s allegation that it is refusing to connect customer-supplied service piping with the main Con Edison lines to the terminal point with the public street line. This court further finds that Consolidated Edison will not, itself, be irreparably damaged by such denial of a preliminary injunction and indeed it is the City of New Rochelle and its *513 residential and commercial customers who need the gas line hookups in order to both live and work in their homes and occupations.
Accordingly, Consolidated Edison’s initial application for a preliminary injunction is denied.
The court further finds that in reaching such determination on the merits of the preliminary injunction, this court by its nature has been declaring the rights of the parties for purposes of a summary judgment motion by plaintiff and the implicit right upon such motion to render summary judgment in favor of defendants on such an application. Accordingly, for the reasons stated above and the law and memorandum cited, the court does now order a judgment declared that Ordinance No. 197 adopted by the City of New Rochelle, which amended its Plumbing and Drainage Code so as to require both permits and installation by licensed plumbers for the installation of such gas lines to be valid as a legitimate exercise of local municipal law, not in derogation of State law, and valid as it is applied and is continuing to be applied to plaintiff Consolidated Edison Co. of New York, Inc.
By such declaration and determination as stated above, it is apparent that plaintiff’s underlying application for a permanent injunction is by its nature subject to the same ruling of law on the issue of summary judgment, and, accordingly, the court dismisses all of plaintiff’s causes of action and awards summary judgment in defendant’s behalf.
Judgment for defendants. Submit judgment on notice accordingly dismissing such complaint.