Franciamore v U.S. Bancorp. (2025 NY Slip Op 51226(U))

[*1]

Franciamore v U.S. Bancorp.

2025 NY Slip Op 51226(U)

Decided on August 1, 2025

Supreme Court, Westchester County

Ondrovic, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 1, 2025
Supreme Court, Westchester County

Gina Franciamore, Plaintiff,

against
U.S. Bancorp. d/b/a U.S. BANK NATIONAL ASSOCIATION, U.S. BANK NATIONAL ASSOCIATION, HUDSON HOMES MANAGEMENT, LLC., HUDSON ADVISOR, LP. d/b/a HUDSON HOMES MANAGEMENT, LLC, KELLER WILLIAMS REALTY PARTNERS, AKELA HOLDINGS, LLC d/b/a KELLER WILLIAMS REALTY PARTNERS, ANNETTE CICINELLI, ALLSTATE INSURANCE CO., SUEZ WATER COMPANY, THOMAS COMELLA, CARNELL ASSOCIATES, INC., Defendants.

Index No. 58959/2023

THE LAW OFFICES OF STEWART A. MCMILLAN
Attorneys for plaintiff
RIVKIN RADLER, 
Attorneys for the Keller Williams Defendants
LITCHFIELD CAVO LLP 
Attorneys for Defendant Veolia Water New York, Inc., s/h/i as Suez Water Company
MCLAUGHLIN & STERN, LLP 
Attorneys for Defendants Thomas Comella and Carnell Associates, Inc.
COLLINS, FITZPATRICK & SCHOENE, 
Attorneys for Defendant Allstate Insurance Co.

Robert S. Ondrovic, J.

In an action, inter alia, to recover damages for breach of contract, negligence, and fraudulent misrepresentation, defendants Thomas Comella and Carnell Associates, Inc., defendants Keller Williams Realty Partners, Akela Holdings LLC d/b/a Keller Williams Realty Partners, Louis Cardillo d/b/a Keller Williams Realty Partners, and Annette Cicinelli, defendant Allstate Insurance Company, and defendant Veolia Water New York, Inc., sued herein as Suez Water Company, separately move, inter alia, pursuant to CPLR § 3212 for summary judgment dismissing the complaint and all cross claims insofar as asserted against each of them.
The following papers were considered on the motions:
PAPERS    
NUMBERED
Notice of Motion (4), Affirmation, Supplemental 1 — 19
Affirmation, Exhibits A — O, Memorandum of
Law
Notice of Motion (5), Affirmation, Exhibits A — P, 20 — 39
Affirmation, Memorandum of Law
Notice of Motion (6), Affirmation, Exhibits A — G, 40 — 53
Affirmation, Exhibits A — B, Memorandum of Law,
Exhibit A
Notice of Motion (7), Affirmation, Statement of 54 — 70
Material Fact, Memorandum of Law, Exhibits A — M
Affirmation in Opposition, Memorandum of Law in 71 — 72
Opposition (6)
Affirmation in Opposition, Memorandum of Law in 73 — 74
Opposition (5)
Affirmation in Opposition, Memorandum of Law in 75 — 76
Opposition (4)
Affirmation in Opposition, Memorandum of Law in 77 — 78
Opposition (7)
Memorandum of Law in Reply (4), Exhibits P — Q 79 — 81
Memorandum of Law in Reply (7), Exhibits N — O 82 — 84
Affirmation in Reply (6) 85
Memorandum of Law in Reply (5) 86
Relevant Factual and Procedural Background
In a residential contract of sale dated as of January 11, 2022, the plaintiff purchased certain real property located at 144 Hillburn Road, Scarsdale, NY (hereinafter the property), in "'as is' condition" for "all cash."[FN1]
The property, which had been foreclosed in around 2019, was listed for sale by the defendants Keller Williams Realty Partners, Akela Holdings LLC d/b/a Keller Williams Realty Partners, Louis Cardillo d/b/a Keller Williams Realty Partners, and Annette Cicinelli (hereinafter collectively the KW Defendants).
On January 10, 2022, the plaintiff entered into a contract with the defendant Carnell Associates, Inc. (hereinafter Carnell) to perform an inspection of the property. On January 11, 2022, Carnell's employee, the defendant Thomas Comella, conducted the inspection and a 40-page written report was provided the next day.
In an email dated January 13, 2022, the plaintiff's real estate agent advised Cicinelli:
The home inspection that took place on Tuesday, January 11th revealed various unexpected repairs.
We were led to believe that the heating system was winterized. The system was not properly winterized. The home inspector observed evidence of pipe ruptures in various rooms. Broken (freeze damaged) pipes & elements need replacement. Without turning on the heating system we don't know the extent of the damage.
There is also concern that water service line from the house to the curb box could be compromised as the water is currently on and shut off at the valve inside the house. The condition of the piping inside the house could not be fully determined. Freeze damage and broken pipes may exist.[FN2]
The plaintiff's real estate agent requested a reduction in the purchase price to offset the [*2]additional repair costs.
In a reply email, Cicinelli stated it was unlikely the seller would agree to a reduction in price. She then stated:
I can tell you the house did not have freeze damage but maybe some pipes broke because of other issues . . . I do not believe it's as bad as your inspector is making it. We have pre inspection reports proving this that I will ask if I can release to you . . . I just briefly went through the old inspection report and no freeze damage was noted and in fact he checked the water and said the pressure held. I really do not believe there is freeze damage and the house was winterized properly.[FN3]
The plaintiff proceeded with the closing, which was held on February 22, 2022.
The defendant Allstate Insurance Company (hereinafter Allstate) issued a homeowner's insurance policy to the plaintiff with an effective date of February 22, 2022. That same date, the plaintiff arranged for the defendant Veolia Water New York, Inc., sued herein as Suez Water Company (hereinafter Veolia), to turn on the water to the property. When Veolia did so, the pipes burst causing extensive water damage.
On May 19, 2022, the plaintiff provided Allstate with notice of the property damage. By letter dated November 28, 2022, Allstate disclaimed coverage on the ground that the plaintiff failed to provide timely notice of the occurrence. Allstate noted, among other things, that "[t]he damaged property was removed prior to [its] inspection" and "[it] was not given an opportunity to inspect the damages in their damaged state, therefore hindering [its] ability to make a proper coverage determination."[FN4]
Allstate cited to an exclusion under the policy for the freezing of "plumbing, automatic protective sprinkler systems, heating or air conditioning systems."[FN5]

In April 2023, the plaintiff commenced this action against, among others [FN6]
, Comella and Carnell, the KW Defendants, Allstate, and Veolia, alleging causes of action sounding in negligence, breach of contract, and fraudulent misrepresentation. The plaintiff alleges, inter alia, that the defendants negligently failed to discover and/or disclose that the plumbing and HVAC [*3]systems were not properly winterized. 
After issue was joined, Comella and Carnell, the KW Defendants, Allstate, and Veolia separately moved, inter alia, pursuant to CPLR § 3212 for summary judgment dismissing the complaint insofar as asserted against each of them.
Comella and Carnell
In support of their motion, Comella and Carnell argued that pursuant to the contract, the plaintiff "specifically agree[d] that CARNELL and its inspectors are not liable for any defects or deficiencies that could not be reasonably discovered during a limited visual inspection" and "CARNELL and its inspectors' liability are limited solely to the cost of this inspection."[FN7]
The contract also provided that "[n]o warranties or guarantees are given or implied for any latent or concealed defects."[FN8]
Comella and Carnell emphasized that the inspection report specifically indicated under a section entitled, "ITEMS OF CONCERN,"
The following are considered items of significant concern:
Heating: Replace damaged piping and verify operation of system.
Plumbing:Verify operation of the system.
Plan update of old water heater [FN9]
The inspection report further noted that under the section entitled "HEATING,"
INSULATION:Heat piping is not adequately insulated. Insulate all exposed piping for efficiency

 ***
PRIMARY UNIT:System was off at the time of inspection. No testing could be performed.
SERVICE NEEDED: Broken (freeze damaged), disconnected, and removed pipes and heating elements need repair and/or replacement.
The piping and equipment needs to be tested for leaks and damage and proper operation [*4]verified."[FN10]
The section entitled "PLUMBING," stated,
All plumbing fixtures were checked for their condition and operation, including running water where possible, except as noted. Multiple plumbing fixtures were operated to check water volumes, volume drops and drainage. The inspector does not operate valves at fixtures where water has been shut-off. Leakage or corrosion in underground or concealed piping cannot be detected by a visual inspection.
It noted that the main water valve was leaking and needed repair or replacement, but was not tested because Comella "does not operate valves at fixtures where water has been shut-off."[FN11]
The inspection report noted that "the condition of the piping could not be fully determined" and "[f]reeze damage and broken pipes may exist."[FN12]
The section entitled, "WASTE SYSTEM," indicated that "[d]raining properties could not be evaluated due to the water in the house being shut off."[FN13]
Comella and Carnell argued that the evidence demonstrates that they issued a comprehensive report following a thorough visual inspection of apparent conditions in readily and easily accessible areas. They stressed that they were not permitted to turn on the water during the inspection and specifically instructed the plaintiff to confirm that the plumbing and heating systems were operable prior to closing. Comella and Carnell also argued that their alleged failure to properly inspect the home does not rise to the level of gross negligence and, in any event, any liability is limited under the contract to the sum paid by the plaintiff for the inspection ($675).
The KW Defendants
In support of their motion, the KW Defendants argued that the property was a deteriorated home acquired in foreclosure and was purchased by the plaintiff in "as is" condition. They noted that the plaintiff proceeded with the closing despite that the inspection report disclosed the existence of freeze damaged, broken pipes. The KW Defendants also emphasized that the plaintiff was represented by an attorney and real estate agent at the closing.
The KW Defendants stressed that the contract of sale provided, inter alia, that the plaintiff "is entering into this Contract, based solely upon [her own] inspection and investigation [*5]and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair . . . or any other matter related to the Premises . . . given or made by Seller or its representatives, and shall accept same "as is" in their present condition and state of repair."[FN14]
The accompanying rider stated that the plaintiff "agrees to take the [property] AS IS and in their present condition" and "neither Seller nor their agents make any representations or warranties of any kind or nature as to the condition of the premises."[FN15]
The addendum also provided in bold capitalized letters:
The purchaser understands that the seller acquired the property by foreclosure . . . and consequently, the seller has little or no direct knowledge concerning the condition of the property . . . purchaser acknowledges and agrees to accept the property in "as is" condition at the time of closing, including without limitation, any defects or environmental conditions affecting the property, whether known or unknown, whether such defects or conditions were discoverable through inspection or not, the purchaser acknowledges that the seller, its agents and representatives have not made and the seller specifically negates and disclaims any representations, warranties . . . implied or express, oral or written with respect to the following: (A) the physical condition or any other aspect of the property."[FN16]
The addendum further stated that the plaintiff represents and warrants that she "is purchasing the Property solely in reliance on its own investigation and inspection of the Property and not on any information, representation or warranty provided or to be provided by the Seller, its servicers, representatives, brokers, employees, agents or assigns."[FN17]

The KW Defendants argued that Cicinelli, the listing agent, did not make a knowing, intentional, material misrepresentation regarding the condition of the pipes. They asserted that the representation made by Cicinelli in an email dated January 13, 2022, that she reviewed an "old inspection report and no freeze damage was noted" was accurate and her stated belief that "the house was winterized properly" was not known to be false since it was based on her review of records related to the property.[FN18]
In particular, an inspection report dated June 19, 2019, stated, among other things, that the water pressure was "good" and there were no issues with the water supply.[FN19]
Cicinelli also referenced a portal which contained notes related to the property indicating on December 11, 2019, "winterization complete" and on November 19, 2021, [*6]"[w]interized dry heat- system held pressure."[FN20]
The KW Defendants argued that, in any event, the plaintiff cannot establish that she justifiably relied on Cicinelli's representations since her own inspector warned her that the pipes were freeze damaged and broken.
The KW Defendants also contended that the plaintiff's fraud claim is barred by the terms of the contract, rider and addendum, which explicitly state that the plaintiff is purchasing the property "as is" and disclaims reliance on any statements or representations made by the seller or its agents. Finally, they argued that they are entitled to summary judgment on their counterclaim and an award of liquidated damages in the amount of $5,000 plus the costs they incurred in defending this action, including attorney's fees.
Allstate
In support of its motion, Allstate argued that it properly disclaimed coverage on the ground that the plaintiff failed to provide timely notice of claim pursuant to the policy. It noted that pursuant to the policy, the plaintiff was required to "immediately" provide notice to Allstate, show Allstate the damaged property, and provide Allstate opportunities to inspect the loss as often as necessary.[FN21]
Allstate emphasized that the plaintiff failed to set forth any reasonable excuse for her delay of 86 days in providing notice. Allstate emphasized that prior to the effective date of the policy and the date of loss, the plaintiff was aware that the plumbing and heating systems were freeze damaged and broken, yet still arranged for the water to be turned on, which caused the pipes to burst and the resulting water damage.
Veolia
In support of its motion, Veolia argued that it is a water utility company, not a plumbing inspector, and had no duty to inspect the property's plumbing system to determine whether it was winterized and operational before turning on the water. Veolia stated that the tariff filed with the Public Service Commission which governs the terms and conditions of the water service it provides for the subject property provides that it is not liable for any damage resulting from the supply or use of water service. Veolia emphasized that the plaintiff did not provide it with a copy of the inspection report prior to the date of the incident and Veoila had no notice of leaking or damaged pipes at the property.
Opposition
In opposition to Comella and Carnell's motion, the plaintiff argued that issues of fact exist precluding summary judgment in their favor because she did not read the terms of the contract she entered into with Carnell and Comella "never requested that he return to check the [*7]plumbing and heating systems completely with the water turned on."[FN22]
The plaintiff emphasized that the water valve at the curb was not shut off, as observed by Comella and Veolia's employee, and nothing had been done to prevent the pipes from freezing and bursting. The plaintiff noted that Comella testified at his deposition that he recalled there was a work order indicating the property had not been winterized and he did not observe anything during the inspection showing that the property had, in fact, been winterized.
In opposition to the KW Defendants' motion, the plaintiff submitted a memorandum of law, however, the substantive arguments set forth therein relate to Comella and Carnell.
In opposition to All State's motion,[FN23]
the plaintiff argued that she provided timely notice of claim, All State had sufficient time to assess the damage, and any delay in providing notice resulted from efforts to resolve the matter by settlement.
In opposition to Veolia's motion, the plaintiff argued that the tariff annexed to Veolia's moving papers involves an entity known as Suez Water New York, Inc. (hereinafter SWNY), and not Veolia, and there are no documents demonstrating that Veolia superseded SWNY. The plaintiff further argued that the tariff is not applicable to the Town and/or Village of Scarsdale, where the property is located. The plaintiff asserted that Veolia's employee was aware of the frozen pipes before he turned on the water and his negligence caused significant property damage.
Reply
In reply, Comella and Carnell emphasized that the plaintiff admitted that she never asked Comella to return to the property to inspect whether the pipes were winterized before arranging for Veolia to turn on the water. They argued that they had no duty to reinspect the property and there was no evidence that the inspection rose to the level of gross negligence.
In reply, the KW Defendants contended that the plaintiff abandoned her claims against them by failing to address any substantive argument in opposition to their motion. They reiterated that they owed no duty to the plaintiff as a matter of law, the plaintiff purchased the property in "as is" condition, and the fraud claim is barred by the specific disclaimer provisions contained in the contract, rider, and addendum.
In reply, Allstate argued that the plaintiff failed to raise a triable issue of fact by arguing that the delay in providing notice of the occurrence was due to her efforts to resolve the matter with Cicinelli. Allstate denied that it had an opportunity to inspect the damage to the property and asserted that the loss was caused by the plaintiff's decision to turn on the water despite [*8]knowing that the pipes were freeze damaged.
In reply, Veolia argued that although the property has a Scarsdale post office mailing address, it is undisputed that the property is located in the Town of Eastchester and that the tariff covers the Town of Eastchester. Veolia noted that the plaintiff testified that she obtained nine permits from the Town of Eastchester in connection with the property and paid multiple fees to the Town of Eastchester for the permits. Veolia also argued that it is a matter of public record that it is the successor to SWNY as evidenced by a certificate of amendment. Veolia asserted that there is no support for the plaintiff's contention that Veolia, a water utility, had notice of the condition of the pipes.

 Analysis
Comella and Carnell
As a general rule, a contractual provision absolving a party from liability for its own negligence or limiting its liability is enforceable (see Seti v Carnell Assoc., Inc., 218 AD3d 509, 510 [2d Dept 2023]; Ryan v. IM Kapco, Inc., 88 AD3d 682, 683 [2d Dept 2011]; Goldstein v Carnell Assoc., Inc., 74 AD3d 745, 746 [2d Dept 2010]). Nonetheless, the public policy of this State dictates that "'a party may not insulate itself from damages caused by grossly negligent conduct'" (Goldstein v Carnell Assoc., Inc., 74 AD3d at 746, quoting Sommer v Federal Signal Corp., 79 NY2d 540, 554 [1992]; see Seti v Carnell Assoc., Inc., 218 AD3d at 510; Princetel, LLC v Buckley, 95 AD3d 855, 856 [2d Dept 2012]).
"To constitute gross negligence, a party's conduct must 'smack[] of intentional wrongdoing' or 'evince[] a reckless indifference to the rights of others" (Ryan v IM Kapco, Inc., 88 AD3d at 683, quoting Sommer v Federal Signal Corp., 79 NY2d at 554; see Huang v Fort Greene Partnership Homes Condominium, 228 AD3d 912, 916 [2d Dept 2024]). "A defendant moving for summary judgment dismissing a cause of action alleging gross negligence must show, prima facie, 'the absence of any conduct that could be viewed as so reckless or wantonly negligent as to be the equivalent of a conscious disregard of the rights of others'" (Huang v Fort Greene Partnership Homes Condominium, 228 AD3d at 916 [internal quotation marks omitted]).
Here, Comella and Carnell established their prima facie entitlement to judgment as a matter of law dismissing the causes of action alleging gross negligence and breach of contract. They demonstrated that the contractual provision limiting Carnell's liability to the cost of the inspection is enforceable and that the inspection "was not so reckless or wantonly negligent as to be the equivalent of a conscious disregard of the rights of [the plaintiff]" (Ryan v IM Kapco, Inc., 88 AD3d at 683 see Seti v Carnell Associates, Inc., 218 AD3d at 511; Princetel, LLC v Buckley, 95 AD3d at 855). The evidence in the record established that Comella conducted a thorough and comprehensive inspection of visible conditions at the property. It is undisputed that Comella disclosed to the plaintiff that he observed broken, frozen, and disconnected pipes, that the main water valve was leaking, and that the heat piping was not adequately insulated. Comella specifically recommended that the plaintiff verify proper operation of the plumbing and heating systems. In addition, the plaintiff acknowledged that she was advised by Comella that he could [*9]not turn on the water and did not ask Comella to return to the property to assess the "winterization of the piping."[FN24]

In opposition, the plaintiff failed to raise a triable issue of fact. There is no support for the plaintiff's self-serving statement that Comella had a duty to contact her and request to return to the property to conduct a second inspection. Moreover, the plaintiff proffered no valid excuse for having failed to read the contract she entered into with Carnell and, therefore, is conclusively bound by its terms (see Prete v Tamares Development 1, LLC, 219 AD3d 1537, 1538 [2d Dept 2023]). Accordingly, the motion of Comella and Carnell pursuant to CPLR § 3212 for summary judgment dismissing the complaint insofar as asserted against them is granted.
The KW Defendants
"New York adheres to the doctrine of caveat emptor and imposes no liability on a seller or the seller's agent to disclose any information concerning the premises when the parties deal at arm's length, unless there is some conduct on the part of the seller or the seller's agent which constitutes active concealment" (Behar v Glickenhaus Westchester Development, Inc., 122 AD3d 784, 785 [2d Dept 2014]; Daly v Kochanowicz, 67 AD3d 78, 91 [2d Dept 2009]; see Laxer v Edelman, 75 AD3d 584, 585 [2d Dept 2010]). "Instead, 'the buyer has the duty to satisfy himself [or herself] as to the quality of his [or her] bargain pursuant to the doctrine.'" (Gordon v Connie Profaci Realty, LLC, 231 AD3d 712, 714 [2d Dept 2024], quoting London v Courduff, 141 AD2d 803, 804 [2d Dept 1988]).
"To recover damages for fraudulent misrepresentation, a plaintiff must prove (1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury" (Davidoff v Hershfeld, 233 AD3d 926, 927 [2d Dept 2024]; see Gordon v Connie Profaci Realty, LLC, 231 AD3d at 714). "'The presence of disclaimers in a written agreement may preclude a claim of common-law fraud by rendering any resulting reliance unjustified'" (McDonald v O'Connor, 189 AD3d 1208, 1211 [2d Dept 2020], quoting Comora v Franklin, 171 AD3d 851, 853 [2d Dept 2019]).
Here, the KW Defendants demonstrated their prima facie entitlement to judgment as a matter of law dismissing the causes of action to recover damages for negligence and fraudulent misrepresentation. The evidence conclusively established that the KW Defendants had no affirmative duty to disclose any information regarding the property to the plaintiff in this arm's length transaction, there was no conduct constituting active concealment, and any reliance by the plaintiff on Cicinelli's representations was unjustified (see McDonald v O'Connor, 189 AD3d at 121; Rosner v Bankers Std. Ins. Co., 172 AD3d 1257 [2d Dept 2019]; Comora v Franklin, 171 AD3d at 853-854).
In particular, the evidence demonstrated that the plaintiff signed the contract for the purchase of the property on January 11, 2022, prior to the inspection and prior to Cicinelli's statement on January 13, 2022, that it was her belief based on an "old inspection report" that there was no freeze damage and "the house was winterized properly"[FN25]
The contract, accompanying rider, and addendum included provisions stating that the purchaser was fully aware of the physical condition and state of repair of the property, was purchasing the property solely in reliance on her own investigation and inspection of the property, was taking the property in "as is" condition, and was not relying on any representations by the seller or the seller's agent. The record also established that after the plaintiff received the inspection report, which explicitly warned of freeze damaged pipes and that the heat piping was not adequately insulated, the plaintiff did not elect to cancel the contract and receive the return of her downpayment. Rather, the plaintiff chose to proceed with the closing on February 22, 2022, and arrange for Veolia to turn on the water despite the recommendation of Comella that she "verify operation of system."[FN26]

Where, as here, the plaintiff arranged for an inspection of the property and the condition of the pipes was detailed in Comella's inspection report before the closing, any reliance by the plaintiff on Cicinelli's representations was not reasonable or justified (see Vasquez v Soto, 61 AD3d 968, 969 [2d Dept 2009]; Rigney v McCabe, 43 AD3d 896, 896-897 [2d Dept 2007]). In addition, contrary to the plaintiff's contention, the KW Defendants demonstrated that Cicinelli did not make a misrepresentation known to be false by her when she stated that the property "did not have freeze damage" and "was winterized properly" since it was based on her review of an inspection report, albeit outdated from 2019, and notes in the portal from December 2019 and November 2021.[FN27]

In opposition, the plaintiff failed to raise a triable issue of fact. Under these circumstances, that branch of the KW Defendants' motion which was pursuant to CPLR § 3212 for summary judgment dismissing the complaint insofar as asserted against them is granted.
Nevertheless, the KW Defendants failed to establish their prima facie entitlement to judgment as a matter of law on their counterclaim for an award of liquidated damages, attorneys' fees, and costs against the plaintiff. "When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations" (Stoyanov v Strihic, 216 AD3d 840, 841 [2d Dept 2023]). "Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing" (Federico v Dolitsky, 176 [*10]AD3d 916 [2d Dept 2019] [internal quotation marks omitted]).
Section 17 of the addendum provides that the term "seller" shall include the seller's "representatives, agents, [and] brokers" and in the event the purchaser breaches any of the terms set forth in that section, "the [p]urchaser shall pay all reasonable attorney fees and costs incurred by the [s]eller in defending such action, and the [p]urchaser shall pay Five Thousand Dollars ($5,000) as liquidated damages for breach of this Section 17 of the Addendum."[FN28]
According to the KW Defendants, the plaintiff breached the clause in Section 17 pursuant to which the purchaser waived "any claims or losses the purchaser may incur as a result of construction on, repair to, or treatment of the property, or other defects, which may now or hereafter exist with respect to the property."[FN29]
Here, the KW Defendants failed to demonstrate, prima facie, that the plaintiff's claims to recover damages for negligence and fraudulent misrepresentation fall within the scope of the plain and clear language of the subject waiver (c.f. Rigney v McCabe, 43 AD3d 896, 897 [2d Dept 2007]). Accordingly, that branch of the KW Defendants' motion which was pursuant to CPLR § 3212 for summary judgment on their counterclaim is denied.
All State
"Where an insurance policy requires that notice of an occurrence be given 'as soon as practicable,' notice must be given within a reasonable time in view of all of the circumstances" (ZL v. Zurich Am. Ins. Co., 214 AD3d 846, 848 [2d Dept 2023]; see Cross Country Staffing, Inc. v Allied World Assur. Co., Inc., 230 AD3d 1102, 1104 [2d Dept 2024]; Great Canal Realty Corp. v Seneca Ins. Co., Inc., 5 NY3d 742, 743 [2005]). "The insured's failure to satisfy the notice requirement constitutes a failure to comply with a condition precedent which, as a matter of law, vitiates the contract" (Plotkin v. Republic—Franklin Ins. Co., 177 AD3d 790, 792 [2d Dept 2019] [internal quotation marks omitted]; see Argo Corp. v Greater NY Mut. Ins. Co., 4 NY3d 332, 339 [2005]).
Here, the policy issued by Allstate to the plaintiff required her to "immediately" provide notice of a loss.[FN30]
It stated:
"[f]ailure to give any notice required to be given by this policy with the time prescribed herein shall not invalidate any claim made by the insured person . . . unless the failure to provide timely notice has prejudiced us. However, failure to give any notice required to be given by this policy . . . whether prejudicial to us or not, shall not invalidate any claim made by the insured person . . . if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon [*11]as was reasonably possible thereafter."[FN31]
It is undisputed that the date of occurrence was February 22, 2022, and the plaintiff did not provide Allstate with notice of the claim until nearly three (3) months later on May 19, 2022. Allstate submitted an affidavit of Jennifer Berg, a senior claim service analyst assigned to investigate the claim, who averred that Allstate first had an opportunity to inspect the property on May 25, 2022, after the plaintiff "had undertaken repairs and renovations" and "removed damaged property."[FN32]
Under these circumstances, Allstate sufficiently demonstrated, prima facie, that the plaintiff failed to provide notice as soon as practicable, in violation of the policy conditions, and that it was prejudiced by the delay (see Travelers Personal Insurance Company v Dratch, 219 AD3d 1526, 1527-1528 [2d Dept 2023]; Plotkin v Republic-Franklin Ins. Co., 177 AD3d 790, 793 [2d Dept 2019]).
In opposition, the plaintiff failed to raise a triable issue of fact as to whether she provided timely notice or whether she had a valid excuse for her failure to provide timely notice. Accordingly, Allstate's motion pursuant to CPLR § 3212 for summary judgment dismissing the complaint and all cross claims insofar as asserted against it is granted. 
Veolia
In support of its motion, Veolia submitted a tariff filed with the New York State Public Service Commission setting forth the schedule for water service for various municipalities, including the Town of Eastchester. "The tariff is the State approved contract setting forth the terms and conditions between the utility [ ] and its customers." (Schlesinger v Con Edison Co. of New York, Inc., 1 Misc 3d 903 [Civ Ct 2003]). "Limitation of liability provisions are an inherent part of the rate-making process" (Lee v Consolidated Edison Co. of NY, 98 Misc 2d 304, 305 [App Term 1978]). "Once accepted by the commission, the tariff schedule (including the limitation of liability provision) takes on the force and effect of law" (id.; see Lauer v New York Telephone Co., 231 AD2d 126, 129 [3d Dept 1997]; Sisters of St. Dominic v Orange and Rockland Power Co., 79 AD2d 1021 [2d Dept 1981]; Consolidated Edison Co. of New York, Inc. v City of New Rochelle, 136 Misc 2d 505 [Sup Ct, Westchester County 1987]).
Section 8.4, entitled "Liability of Company," provides that "[e]xcept as to the liability, if any, imposed by law, [it] will not be liable for any injury, casualty or damage resulting in any way from the supply or use of water service."[FN33]
Section 8.5, entitled "Adequacy of Customer's Facilities," provides that "[n]either by inspection nor non-rejection, nor in any other way, does [Veolia] give any warranty, expressed or implied, as to the adequacy, safety or characteristics of [*12]any structures, equipment, pipes, appliances or devices on the customer's premises."[FN34]

Here, although the provision purports to limit Veolia's liability for damage resulting from the use of water services, it also contains an exception for liability imposed by law. In considering the language of that provision and that all ambiguities are strictly construed against the drafter, Veolia failed to demonstrate, prima facie, that the plaintiff's cause of action to recover damages for negligence against it is barred (see Lauer v New York Telephone Co., 231 AD2d 126, 129 [3d Dept 1997]; Reshevsky v United Water New York, Inc., 21 Misc 3d 1108 [Sup Ct, Rockland County 2005]). Nevertheless, Veolia established as a matter of law that it had no duty to inspect the condition of the pipes before turning on the water and was not negligent.
At her deposition, the plaintiff acknowledged that she arranged for Veolia to come to the property to turn on the water on February 22, 2022, she did not ask Veolia to perform any other task, and she had no expectation that Veolia would do anything other than turn on the water. The plaintiff testified that when the technician turned on the water, she noticed water leaking from multiple locations and the technician shut off the water within a few minutes. The technician testified that his job responsibilities included reading, installing and testing water meters. He asserted that he is not a plumber or an inspector. The technician stated that the water valve at the curb was in the "on" position, and the valve on the water meter in the basement was in the "off" position.[FN35]
He testified that he did not perform any inspection of the interior of the house, explaining "we do not provide those kinds of services."[FN36]
The technician stated that he notified the plaintiff that he was turning on the water and she assented. He contended that after he turned on the water, he heard water leaking and immediately shut off the valve.
In opposition, the plaintiff failed to raise a triable issue of fact. Although the tariff lists SWNY as the water utility company, Veolia is, as a matter of public record and as evidenced by the certificate of amendment changing the name of SWNY to Veolia, the successor-in-interest. In addition, the plaintiff's contention that the tariff does not apply to the subject property because it is located in Scarsdale is disingenuous. The evidence in the record demonstrates as a matter of law that the property is located in the Town of Eastchester and, therefore, falls within the territory of the tariff. The plaintiff acknowledged as much by testifying during her deposition that she obtained various permits from the Town of Eastchester in connection with the renovation of the property and issued numerous checks to the Town Eastchester.
Moreover, contrary to the plaintiff's contention, there is no evidence that Veolia had notice of the condition of the pipes before turning on the water. Veolia was not provided with a copy of the inspection report before the technician turned on the water and there is no evidence that the plaintiff advised the technician of the condition of the pipes. The cases cited by the [*13]plaintiff do not support her contention that issues of fact exist regarding Veolia's alleged negligence and, in fact, support an award of summary judgment in Veolia's favor (see Jacques v Fleuren, 136 AD2d 850 [3d Dept 1988] [utility company not liable for escape of gas from heating system where utility had no obligation to inspect equipment]; Brady v Consolidated Edison Co. of NY, 103 Misc 2d 124 [Sup Ct, NY County 1979] [utility company had no duty to inspect gas valves in basement where no complaints of gas leak]).

 Conclusion
Based on the foregoing, it is hereby,
ORDERED that the motion of the defendants Thomas Comella and Carnell Associates, Inc., for summary judgment dismissing the complaint insofar as asserted against them is granted; and it is further,
ORDERED that the branch of the motion of the defendants Keller Williams Realty Partners, Akela Holdings LLC d/b/a Keller Williams Realty Partners, Louis Cardillo d/b/a Keller Williams Realty Partners, and Annette Cicinelli which was for summary judgment dismissing the complaint insofar as asserted against them is granted and that branch of the motion which was for summary judgment on their counterclaim is denied; and it is further,
ORDERED that the motion of the defendant Allstate Insurance Company for summary judgment dismissing the complaint and all cross claims insofar as asserted against it is granted; and it is further,
ORDERED that the motion of the defendant Veolia Water New York, Inc., sued herein as Suez Water Company, for summary judgment dismissing the complaint and all cross claims insofar as asserted against it is granted;
ORDERED that all other relief requested and not decided herein is denied.
The foregoing constitutes the Decision and Order of this Court.
Dated: August 1, 2025
White Plains, NY
E N T E R,
HON. ROBERT S. ONDROVIC, J.S.C.

Footnotes

Footnote 1:NYSCEF Doc No 204

Footnote 2:NYSCEF Doc No 98, p 5-6

Footnote 3:id. at 6

Footnote 4:NYSCEF Doc No 222

Footnote 5:id. at p 4 

Footnote 6:By order dated January 12, 2024, the court (Hon. Hal B. Greenwald, J.S.C.), granted the motion of the defendants U.S. Bancorp. d/b/a U.S. Bank, National Association, U.S. Bank National Association, Hudson Homes Management, LLC, and Hudson Advisor, L.P. d/b/a Hudson Homes Management, LLC pursuant to CPLR § 3211 dismissing the complaint insofar as asserted against them.

Footnote 7:NYSCEF Doc No 182

Footnote 8:id.

Footnote 9:NYSCEF Doc No 184 at p 2 

Footnote 10:id. at p 4

Footnote 11:id. at p 5

Footnote 12:id. 

Footnote 13:id. at p 6

Footnote 14:NYSCEF Doc No 204, Residential Contract of Sale, ¶ 12

Footnote 15:id., Rider, ¶ 33

Footnote 16:id., Addendum, ¶ 7

Footnote 17:id., Addendum, ¶16(a)

Footnote 18:NYSCEF Doc No 208

Footnote 19:NYSCEF Doc No 209

Footnote 20:NYSCEF Doc No 210

Footnote 21:NYSCEF Doc No 219

Footnote 22:NYSCEF Doc No 264 ¶ 52

Footnote 23:The cover page of the memorandum of law was incorrectly listed as opposition to the motion of Comella and Carnell.

Footnote 24:NYSCEF Doc No 186 at 552

Footnote 25:NYSCEF Doc No 98, p 6
Footnote 26:NYSCEF Doc No 184 at pp 2, 4

Footnote 27:NYSCEF Doc No 208

Footnote 28:NYSCEF Doc No 104, p 19

Footnote 29:id.

Footnote 30:NYSCEF Doc No 219, p 15

Footnote 31:Id.

Footnote 32:NYSCEF Doc No 215 at ¶ 22

Footnote 33:NYSCEF Doc No 241, p 33 

Footnote 34:id.

Footnote 35:NYSCEF Doc No 237, p 41-42, 50

Footnote 36:id. at p 81